The City of Philadelphia *v.* The River Front Railroad Company, (Appellant,) The Philadelphia & Reading Railroad Company, and James Butterworth, Charles C. Butterworth and William B. Butterworth, doing business under the name of H. W. Butterworth & Sons, and the Hero Fruit Jar Company.

*Railroads—Municipal consent to use of streets.*

Municipal consent is requisite to enable any railroad company, whether incorporated by special act of assembly or under the general railroad laws, to enter upon and occupy the public highway of a city, unless its charter contains authority therefor in express terms, or by necessary implication.

A municipality cannot without legislative sanction, legalize the construction, operation and maintenance of a railroad upon a public street by any party not itself possessing a grant or franchise authorizing such use of the streets conferred by the legislature expressly, or by necessary implication; nor can it delegate to such person any portion of the authority vested in it by the legislature.

An ordinance of a municipality authorized by its terms certain private individuals to build a railroad upon a street, "which railroad shall be built after and upon consultation with and under the auspices" of two railroad companies mentioned. The ordinance further provided that " any siding and turnouts that may be constructed from and out of the line of said railroad as herein authorized into or upon any warehouse, manufactory or place of business, shall at all times be equally free to and for the use of both companies." The ordinance also provided that in case either of the companies should decline or refuse to consult with the private individuals who were authorized to build the road, or should refuse to "jointly supervise" the construction of the road, the individuals mentioned should then proceed with the construction of a railroad upon consultation with and under the supervision of either of the railroad companies who should consent so to act, and such company thereafter should alone have the right to occupy and run their cars upon the said railroad. *Held* (1) that the ordinance did not contemplate that the private individuals mentioned in it should construct and operate the railroad; (2) that the ordinance gave consent to the use and operation of the railroad by both of the railroad companies acting jointly; (3) that a joint use and operation was the primary purpose of the ordinance; (4) that the separate use and control of the railroad by but one of the railroad companies was contemplated and to be permitted only in the event of the failure of one of them to comply with the conditions described.

A railroad company organized under the general railroad law of April 28, 1868, P. L. 65, has a right to construct and operate a railroad on the streets of the city of Philadelphia, if the consent of the city be given thereto.

Argued Jan. 13, 1896. Appeal, No. 380, Jan. T., 1895, by The River Front Railroad Company, from decree of C. P. No. 4, Phila. Co., March T., 1886, No. 818, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to restrain the construction of a railroad.

The case was referred to Charles E. Morgan, Jr., Esq., master, who reported as follows :

This controversy, for all practical purposes, is between the plaintiff and the Philadelphia & Reading Railroad Company, defendant, on one side, and The River Front Railroad Company on the other, both the plaintiff and the first named defendant contending that the railroad, which is the subject-matter of the dispute, should be controlled, maintained, and operated by both the defendants acting jointly, and The River Front Railroad Company, defendant, now in possession of the road, claiming an exclusive right to it as its own property.

The city avers that upon the 23d day of June, 1884, an ordinance of councils was approved, entitled " An ordinance to authorize the construction and joint occupation of a railroad beginning at the intersection of Cedar street and Lehigh avenue, across Lehigh avenue and along Commerce, York, Gaul, Almond, and Aramingo streets, connecting the same with tracks of The River Front Railroad and the Philadelphia & Reading Railroad Companies." And also that " the purposes and intent of said ordinance of June 23d, 1884, were to cause the building of the said railroad and its use and occupation for the advantage and convenience of the citizens doing business upon the streets named in said ordinance, so that free access to the properties along the route thereof might be had by means of a connection with both The River Front and the Philadelphia & Reading Railroad Companies' systems, and that said tracks should be jointly used and occupied by the said companies for the convenience and advantage of the property-owners doing business on said route."

This averment is reiterated in paragraph 10, and in the prayer for relief the court is asked to enter such decrees " as will prevent the construction of the said railroad under the ordinance of June 23d, 1884, and the permit heretofore referred to, except

under the joint supervision of the said The River Front Railroad Company and the Philadelphia & Reading Railroad Company, so that the same may be used, as contemplated in the ordinance, by both companies, that the citizens along the route thereof may have the benefit of the competition of the said roads."

The Philadelphia & Reading Railroad Company, by its answer and cross bill admits the purpose and intent of the ordinance to be as stated by the plaintiff, and expressly disclaims all right to use said streets for railroad purposes otherwise than jointly with The River Front Road ; and in the prayer for relief, with which the cross bill closes, the court is asked, in language almost identical with that used by the plaintiff, to decree that upon payment by the Philadelphia & Reading Railroad Company of its proportion of the expense of construction, it, the said company, is entitled to own, run, use, and operate, jointly with the defendant, The River Front Railroad Company, the railroad constructed upon the streets named in the said ordinance, under and in accordance with the provisions thereof.

The River Front Railroad Company, defendant, however, in its answer positively asserts an exclusive right to own, maintain, control, and operate said railroad as a branch to its main line, as authorized to be constructed under its articles of association and letters patent of the commonwealth, issued May 5, 1876, under the act of assembly approved April 4, 1868, entitled " An act to authorize the formation and regulation of railroad corporations," and also under the ordinance of councils, approved May 31, 1877 ; and on pages 3 and 4 of its answer, paragraph 6, it is averred that this defendant, " on the first day of August, 1885, did pass a resolution in the following words : ' Resolved, That, in conformity with the ordinance of select and common councils of the city of Philadelphia, approved June 23d, 1884, the route of a single-track railroad, beginning at a point on the River Front Railroad at Lehigh avenue, now constructed and operated about one hundred and twenty-five feet northwestwardly from Cedar street ; thence curving diagonally across Lehigh avenue to Commerce street ; thence along Commerce street to York street ; thence along York street to a point southeastwardly from Cedar street, a total distance of about four thousand feet : and, again, from York street along Almond

street to Aramingo street, and along Aramingo street to a point northwestwardly to Gaul street, a distance of about eight hundred and fifty-two feet, be and the same is hereby approved and adopted as a branch line.'" Then follows this averment: "And this respondent says that, by virtue of the adoption of the branch line as set forth in the resolution of August 1st, 1885, and by reason of the ordinance of 1877, as aforesaid, this respondent was advised that if it did proceed with the construction of said railroad, that it should thereafter alone have the right to occupy and run its cars on the said railroad, and to that end this respondent received the permit which had been issued under the said ordinance, on October 28th, 1885, authorizing H. W. Butterworth & Son, the Hero Fruit Jar Company, and such other of the petitioning manufacturers, business men, owners, and occupants of property in the vicinity of a route for a railroad, beginning at the intersection of Cedar street and Lehigh avenue, along Commerce, York, Gaul, Almond, and Aramingo streets, and that, in accordance with the powers vested in it by the act of 1868, as aforesaid, in regard to branch lines, and of the ordinance aforesaid consenting to the construction thereof, and of the permit issued as aforesaid, a railroad has been constructed on the streets named, and it is now exclusively operated by this respondent as its branch line. And this respondent is advised that it is of no legal significance what reason any property-owners may have had in failing to avail themselves of any advantage accruing to them by reason of the ordinance of June 23d, 1884, and that the rights of this respondent are in nowise affected thereby, as it did not seek to avail itself of it until after the lapse of one year, and then only did proceed as hereinbefore recited."

Again: "What was actually done by this respondent has been truly stated, and its rights depend upon the interpretation of its powers under the statute and the ordinance of June 23d, 1884, as aforesaid."

Also: "And this respondent saith in answer to the eleventh paragraph of said cross-bill that it has stated in its answer to the original bill the history of the construction of its branch line at this point, and it does now insist that it is entitled exclusively to said road and has the sole right to the use and occupation of the same."

On June 23, 1884, the ordinance of councils of the city of Philadelphia, a copy of which is appended to plaintiffs' bill, was approved. Said ordinance was passed in response to petitions presented to councils in the previous month, by private individuals doing business on or near the line of railroad described in the ordinance.

Before the passage of this ordinance officers of both railroad companies mentioned therein were consulted by the petitioners for the ordinance with reference to the proposed railroad.

Nothing was done under said ordinance by any of the parties named therein until February 23, 1885, when J. Lowrie Bell, general traffic manager of the defendant, the Philadelphia & Reading Railroad Company, addressed the business men and manufacturers mentioned in the ordinance a letter, in which he stated that the Philadelphia & Reading Company would be glad to consult with them relative "to the proposed railroad, and the several provisions of the ordinance referred to."

This letter was not replied to, and nothing afterwards transpired showing that the Philadelphia & Reading Company at any time declined or refused to make the offer contained in the letter of Mr. Bell.

In examiner's report, examination of Mr. Bell, appears the following: "Q. Then, as I understand it, you did not, to your recollection and knowledge, get any reply to this letter of February 23, 1885. You were unsuccessful in getting Butterworth and the Hero Fruit Jar people to meet you, or the other people to do anything, and all that was not through any lack or indifference of action on your part. Is that so? A. That is correct. Yes, sir. Q. I suppose I may take it that you did not, nor to your knowledge did the receivers of the Reading Railroad Company during the year, or any time for that matter, decline or refuse to consult with Butterworth & Sons and the Hero Fruit Jar Company, or The River Front Railroad Company, for the purpose of carrying out the purposes of that ordinance. A. You may."

On August 1, 1885, The River Front Railroad Company passed the resolution set out in full on page 3, paragraph 6, of its answer, adopting the line of railroad described in the ordinance as a route for a branch to its main line.

On August 21, 1885, The River Front Railroad Company

filed the bond required by section 4 of the ordinance of June 23, 1884, with the city solicitor, and on September 28, 1885, applied to the department of highways of the city for a permit to lay its tracks upon the streets described in the said ordinance. This was objected to by the Philadelphia & Reading Railroad Company, and the permit was not granted. On October 2, 1885, Butterworth & Sons and the Hero Fruit Jar Company made application for a permit under said ordinance, and the chief commissioner of highways was authorized to issue it.

On October 5, 1885, before any permit was issued, a letter was written to Mr. Latta, general agent, River Front Railroad Company, signed by Hero Fruit Jar Company and H. W. Butterworth & Sons, in which it is stated that the subscribers " do hereby transfer the privilege granted by the permit to The River Front Railroad Company."

On October 8, representatives of the Philadelphia & Reading Railroad Company appeared before the board of supervisors, together with William Henry Lex, representing the property owners, petitioners named in the ordinance of June 23, 1884, other than Butterworth & Sons and the Hero Fruit Jar Company, and asked that the resolution of the board of October 2, 1885, be modified so that the permit should be issued not to Butterworth & Sons and the Hero Fruit Jar Company only, but to them and the other petitioners named; and such change was then made.

On October 26, 1885, a permit was issued to the persons, petitioners named in the ordinance, to remove the street pavements and lay a railroad track on the streets described in the ordinance.

On October 31, 1885, letters were addressed to the Philadelphia & Reading Railroad Company and The River Front Railroad Company, by a committee of said petitioners, inviting the officers of said railroad companies to meet them for the purpose of arranging for the construction of the railroad described in the ordinance. No meeting was held, and on March 10, 1886, Mr. Du Barry, the president of the River Front Railroad Company, wrote a letter to the attorney for petitioners, Mr. Lex, in which he stated " that his company has, by virtue of its branching powers and the ordinance of the councils of the city of Philadelphia, approved June 23, 1884, entered upon the construction of the road referred to."

Early in March, 1886, Mr. Lex met the officials of the Philadelphia & Reading Railroad Company, who then reaffirmed their ability and willingness to go on with the work upon the road, and a contract was made by it with William Wharton, Jr., about March 10, and work then commenced, about one thousand feet of track being laid.

The River Front Railroad Company about the same time commenced work and constructed so much of the line as was not constructed by the Philadelphia & Reading Company.

Councils of the city of Philadelphia thereupon passed a resolution, in which, after reciting that "The River Front Railroad Company was engaged in constructing a railroad on the streets mentioned in the ordinance of June 23, 1884, as a branch of its own railroad only," directed that "the city solicitor be and he is hereby instructed to forthwith commence such legal proceedings as may be necessary to prevent the building of a railroad upon any of the streets named in the ordinance by either the said River Front Railroad or the said Philadelphia & Reading Railroad Companies, as a branch or part of its own railroad alone, or for use and operation by its own trains exclusively. . . . . And immediately thereupon the bill of complaint in this suit was filed by the city solicitor."

On May 21, 1886, the board of managers of the Philadelphia & Reading Railroad passed a resolution adopting a branch railroad upon the line described in said ordinance of June 23,1884.

On June 18, 1886, said company gave its bond to the city of Philadelphia, as required by both sections 3 and 4 of said ordinance.

The matters in dispute in this suit are covered by the following questions:

First. What were the rights of the respective defendants to maintain and operate a railroad on the streets referred to independently of the ordinance of June 23, 1884?

Second. What was the effect of said ordinance of councils of June 23, 1884?

Third. Has The River Front Railroad Company become entitled to possess, use, and operate said railroad to the exclusion of the Philadelphia & Reading Railroad Company, under section 6 of the said ordinance?

As stated in the pleadings, The River Front Railroad Com-

pany was incorporated under the general railroad act of April 4, 1868. Section 12 of that act provides : " That no corporation formed under the said act shall enter upon and occupy any street, lane, or alley in any incorporated city without the consent of such city having first been obtained." It is clear, therefore, that this defendant possessed by virtue of its incorporation no right to build any part of its road, either main road or branch, without having first obtained the consent of the city of Philadelphia. The ordinance of May 31, 1877, referred to in its answer does not expressly or by implication affect any portion of the railroad which is the subject of this litigation, that is, the railroad commencing at the intersection of Cedar street and Lehigh avenue, and running along Commerce, York, Gaul, Almond and Aramingo streets, as described. In that ordinance (see section 1) the city of Philadelphia consents only to the construction and operation by The River Front Railroad Company of a railroad upon Delaware avenue, between Dock street and the south side of Callowhill street, and nowhere else. It contains no assent whatever to the construction of the railroad referred to in this suit as a branch to the said defendant's main line, and the only assent by the city of Philadelphia to the construction of this so-called branch is to be found in the ordinance referred to in the bill of complaint, approved June 23, 1884. The Philadelphia & Reading Railroad Company was organized under the act of assembly approved April 4, 1833, entitled " An act to authorize the governor to incorporate the Philadelphia & Reading Railroad Company," and by the act approved April 12, 1864, entitled " An act to extend so much of the provisions of the act to incorporate the Pennsylvania Railroad Company, approved April 13, 1846, as relates to the making of lateral or branch railroads, to the Lebanon Valley and Philadelphia & Reading Railroad Companies," the powers conferred on the Pennsylvania Railroad Company as to laterals or branch roads were extended to the Philadelphia & Reading Railroad Company. Neither the charter of the Philadelphia & Reading Railroad Company, nor the act referred to of 1864, contains any provision expressly requiring the consent of a municipality in order to enable that company to enter upon its streets. The master, however, is of the opinion that without such assent neither of the railroads defendant was competent to construct and operate a railroad

upon the said streets of the city of Philadelphia, independently of the requirement contained in the act of 1868, which by its terms applied only to railroad companies formed and created thereunder. Municipal consent is requisite to enable any railroad company, whether incorporated by special act of assembly or under the general railroad laws, to enter upon and occupy the public highway of the city, unless its charter contains authority therefor, in express terms or by necessary implication. See Duncan v. Penna. R. R. Co., 7 W. N. C. 551; s. c., 94 Pa. 435; Pennsylvania Railroad's Appeal, 115 Pa. 514.

The ordinance is entitled:

An ordinance to authorize the construction and joint occupation of a railroad beginning at the intersection of Cedar street and Lehigh avenue, across Lehigh avenue and along Commerce, York, Gaul, Almond and Aramingo streets, connecting the same with tracks of The River Front Railroad and Philadelphia & Reading Railroad companies.

Section 1 in terms authorized H. W. Butterworth & Sons, the Hero Fruit Jar Company, and others, the petitioners, and such other citizens who should join them, owners and occupants of property in the vicinity of the route mentioned in the ordinance, " To construct a single railroad track for ordinary purposes and with suitable and necessary turnouts and sidings into and upon their warehouses, manufactories and other places of business located thereon, as follows: Beginning at a point on or about the intersection of Cedar street and Lehigh avenue; thence diagonally across Lehigh avenue to Commerce street; thence along Commerce street to York street; thence along York street to Gaul street; thence continuing along York street to a point between Cedar and Gaul streets so as to enter the machine works of H. W. Butterworth & Sons; from York and Almond streets along Almond street to Aramingo street, and along Aramingo street to Gaul street, which said railroad shall be built after and upon consultation with and under the auspices and supervision of The River Front Railroad and the Philadelphia & Reading Railroad Companies; and the Philadelphia & Reading Railroad Company is hereby authorized and empowered to build a railroad from Lehigh avenue to and across The River Front Railroad now laid thereon to a point of connection at or near where Cedar street crosses Lehigh avenue with the railroad

hereinbefore authorized to be constructed to such point of connection."

Section 2 provides that: "The said railroad so constructed shall be used thereafter by the said River Front Railroad Company and the said Philadelphia & Reading Railroad Company, who are hereby jointly authorized to occupy said streets with the said single track railroad, it being hereby clearly understood and defined that any sidings and turnouts that may be constructed from and out of the line of the said railroad as herein authorized into or upon any warehouse, manufactory, or place of business shall be at all times equally free to and for the use of both of the said companies, it being one of the purposes of this ordinance, and so that the manufactories and business interests along the said railroad shall have the full benefit of receiving and delivering the property to both or each of the said roads."

Section 6 provides that: "In case the said River Front Railroad and Philadelphia & Reading Railroad Companies shall decline or refuse to consult with the said H. W. Butterworth & Sons, the Hero Fruit Jar Company, and others of the said petitioners, manufacturers, business men, owners, and occupants of property relative to the construction of said railroad, or to jointly supervise the construction thereof within one year after the passage of this ordinance, that then and in such event the said H. W. Butterworth & Sons, the Hero Fruit Jar Company, and others of the said petitioners, manufacturers, business men, owners, and occupants of property shall thereafter proceed with the construction of said railroad upon consultation with and under the supervision of either of said railroads, who shall consent so to act and who shall thereafter alone have the right to occupy and run their cars upon the said railroad."

This ordinance, if within the scope of the powers of the city of Philadelphia over the commonwealth's highways within its limits, must be construed as a consent to the railroad companies therein named, or one of them, to build and maintain and operate said railroad, and not to the private individuals also referred to. Those who would occupy the streets of the city for railroad purposes must, as their warrant therefor, show authority derived directly from the state; and the city cannot, without legislative sanction, legalize the construction, operation and

maintenance of a railroad thereupon by any party not itself possessing a grant or franchise authorizing such use of the streets conferred by the legislature, expressly or by necessary implication; nor can it delegate to such person any portion of the authority vested in it by the legislature : See Phila. & Trenton Railroad, 6 Wharton, 25; Barker & Hartman Steel Co., 129 Pa. 551.

Therefore if the ordinance referred to be treated as a grant of authority to Butterworth & Co., the Hero Fruit Jar Company, and the other private individuals, petitioners before councils, to build and operate the road described, or to authorize others to do so, and not to the railroad companies named in it, it was utterly void, councils having no power to confer the privileges, which it purports to grant, upon any private individual or individuals, and the permit obtained by the said Butterworth & Co. and others, and transferred by them to The River Front Railroad Company, was itself a nullity, and conferred no rights upon that company. But, fortunately for The River Front Railroad Company, as well as for its codefendant, the Philadelphia & Reading Railroad Company, such a construction of the ordinance is not necessary, nor indeed is it that which, under the well-settled rules of construction applicable to both statutes and ordinances, is the natural effect of the language used, considered in connection with the evident purpose sought to be accomplished, which was to benefit the public on the line of the proposed railroad and its vicinity, by affording it facilities for shipment of goods on The River Front Railroad to the Pennsylvania Railroad, and also by the Philadelphia & Reading Railroad to the Baltimore & Ohio Railroad and other connections. This it was judged by councils could be best secured by placing the construction of the line under the control of the private individuals named in the ordinance, and giving the right to use and operate it to both railroad companies defendants, acting jointly, so that shippers by both of the two principal lines of railroad running into this city would be afforded the same facilities for carriage of merchandise.

That such was the intent of councils is manifest upon the face of the ordinance.

See section 1 : " Which railroad shall be built after and upon consultation with and under the auspices of The River Front

Railroad Company and the Philadelphia & Reading Railroad Company."

Section 2.: " It being clearly understood and defined that any sidings and turnouts that may be constructed from and out of the line of said railroad as herein authorized into or upon any warehouse, manufactory, or place of business shall at all times be equally free to and for the use of both companies, it being one of the purposes of the ordinance, and so that the manufactories and business interests along the said railroad shall have the full benefit of receiving and delivering property to both or each of the said roads."

I conclude therefore that by the ordinance of June 23, 1884, the city of Philadelphia consented to the use and operation of said road by both of said defendants acting jointly; that a joint use and operation was the primary purpose sought to be accomplished, and also that the separate use and control of the road by but one of the said companies was contemplated and to be permitted only in the event of the failure of one of them to comply with the conditions prescribed.

No question as to the power of the city of Philadelphia, by ordinance, to authorize the use of the public streets, by both or either of these defendants, has been suggested by any party to the suit. I feel, however, compelled to consider it, because of the recent decision of the court of common pleas, No. 3, of this county, in the Belt Line cases, 29 W. N. C. 202, 1 Dist. 1, and the views expressed in the opinions of two of the judges of that court, to the effect that a railroad cannot be lawfully constructed or operated on the streets of the city of Philadelphia, by a corporation formed under the general railroad law of 1868, although the consent of the city be given thereto. As to the Philadelphia & Reading Railroad Company, it had authority to extend its line, with the assent of the city, to and along the streets mentioned under its charter, and under the act of assembly of June 9, 1874, P. L. 218, as construed by the court of common pleas, No. 2, in Duncan v. The Penna. R. R. Co., 7 W. N. C. 551; s. c., 94 Pa. 435. This statute authorizes " cities, counties, and townships of this state to enter into contract with any railroad companies whose roads enter their limits, whereby the said railroad companies may relocate, change, or elevate their roads," etc., and in the case cited, the consent of councils, by

ordinance, was treated as such a contract within the meaning of
the statute.

As to The River Front Company, it must be conceded that if
the construction given to the act of April 4, 1868, under which
it was incorporated, particularly the twelfth section, in the opin-
ions delivered by the majority of the court in the Belt Line
cases, is correct, it was not competent for councils to authorize
the construction or use of a railroad by that company upon said
streets.

Although my own opinion upon this subject coincides with
that of Judge REED, expressed in his dissenting opinion, de-
livered in the said case, I should perhaps have felt bound in
this report by the opinions of the majority of the court, but for
the decisions of this court (common pleas, No. 4) and the Su-
preme Court in Pennsylvania Railroad Co.'s Appeal, reported in
116 Pa. 55, where the right of a railroad corporation, formed
under the acts of 1868 and 1849, with the consent of the city,
to construct and use a line of railroad on the public streets, is
distinctly recognized: See also Market Co. v. Railroad Co., 142
Pa. 580.

Following these cases, I further find that it was within the
scope of the authority conferred by the legislature upon the city
of Philadelphia, to authorize, by ordinance, the use and occupa-
tion of the said streets by both or either of said railroad com-
panies.

The conditions imposed by the ordinance are as follows:

(*a*) A bond by the Philadelphia & Reading Railroad Com-
pany covering possible damages by reason of crossing Lehigh
avenue and the tracks of The River Front Railroad Company.

(*b*) Conformity in the construction of the road to the grade
of the streets and approval of the plan for the same by the board
of surveyors of the city of Philadelphia.

(*c*) The filing of a bond by the said companies to protect the
city from the expense consequent upon the laying and use of
said tracks for railroad purposes.

(*d*) The condition contained in section six which provides
that if the said companies shall decline or refuse to consult with
said petitioners relative to the construction of the road or to
jointly supervise the construction thereof within one year after
the passage of the ordinance, the petitioners " shall proceed with

such construction under the supervision of either of said railroads who shall consent so to act, and who shall thereafter alone have the right to occupy and run their cars upon said railroad."

At the date of the filing of the bill the Philadelphia & Reading Railroad Company had not given the bond required by the ordinance. This is admitted in paragraph 2, page 5, of its answer; and it is also stated therein that the defendant is ready and willing to give such bond; and on June 18, 1886, after the filing of the answer, and before the filing of the cross bill, a bond covering the requirements of both section three and section four was given by it to the plaintiff.

" Your orator has also delivered to the city of Philadelphia, in accordance with the terms of said ordinance, a bond indemnifying said city of and from all loss, damage, claim, or demand by reason of the construction and use of the tracks of the said branch railroad across Lehigh avenue and the railroad thereon used and occupied by The River Front Railroad Company, and also protecting the said city of Philadelphia from any expense whatever consequent upon or growing out of the laying or use of the railroad tracks, sidings, or turnouts authorized by said ordinance."

A bond in accordance with the requirements of section 4 of said ordinance was also given to the city of Philadelphia by The River Front Railroad Company, on August 31, 1885, and a plan of the road submitted and approved by the board of survey.

There is no averment in the bill that either of said railroad companies defendant declined or refused to consult with the said Butterworth and others, petitioners, relative to the construction of the said road, or to jointly supervise the construction thereof within one year after the passage of said ordinance. The Philadelphia & Reading Railroad Company in its answer distinctly avers that within the year following the passage of the ordinance " it did endeavor to secure the co-operation of all the property owners upon said streets with itself and The River Front Railroad Company in the building of said railroad under the provisions of said ordinance." And again on page 3, that " neither it nor its receivers had declined or refused to consult with the said Butterworth & Sons, the Hero Fruit Jar Company, and the said River Front Railroad Company, and that it

has been at all times before and since the expiration of the year from the passage of said ordinance, and is now ready and willing to act with the property-owners and The River Front Railroad Company in building said railroad under said ordinance."

From the evidence it appears that as early as February 23, 1885, this defendant expressed its willingness to proceed under the ordinance. (See testimony of J. Lowrie Bell.)

" A. My recollection is that soon after the passage of the ordinance I sent a representative—my memory is not altogether clear as to whether I did not myself on one occasion go to see Mr. Butterworth and express to him a readiness on the part of the Reading interests to go on with the arrangements. I do not think there was any correspondence conducted for some weeks or months after the ordinance was approved by the mayor, but it went along for some time, and, as far as my knowledge goes, a letter was addressed by me to Grafely & Brother, Butterworth & Sons, and the Hero Fruit Jar Company, dated February 23, 1885. The ultimate outcome was, that in February, 1885, fearing that there might be a desire to put off doing anything until after the expiration of the year, I prepared this letter. Throughout the whole matter I would say that I was in conference with the receivers of the Reading Railroad Company and acted under their authority. This letter was addressed to the parties above named and such other manufacturers and business men of the Thirty-first ward of the city of Philadelphia as were interested in the construction of a traffic railroad along Commerce, York, Gaul, Almond, and Aramingo streets as per ordinance approved by the mayor, June 23, 1884. It read as follows :

" ' February 23, 1885.

" ' The Philadelphia & Reading Railroad Company will be glad to consult with you relative to the proposed railroad and the several provisions of the ordinance above referred to.

" ' Yours truly,

" ' J. Lowrie Bell,

" ' General Traffic Manager.'

" Q. What reply did you get, if any, to that letter, or what took place then ?

" A. My recollection is that we did not hear from any one for a long time afterwards.

"Q. I will ask you just here, because in a letter dated October 1, 1885, written by the Hero Fruit Jar Company, per F. W. Perry, to the board of highway supervisors, Mr. J. D. Estabrook, president, which is printed on page 11 of the bill of the city of Philadelphia in this case, it is stated, referring to your letter of February 23, 1885, that a representative of this company, that is, the Fruit Jar Company, called upon them, that is, the Philadelphia & Reading Railroad Company, in reply to your letter, and was informed that in the present financial condition of the Reading Railroad it would be impossible for them to do anything in the matter, and advised us (the Fruit Jar Company) to consult the Pennsylvania Railroad. Please tell me whether, in point of fact, Mr. Perry, representing the Hero Fruit Jar Company, called upon you in reply to your letter at any time, or if he did so call upon you in reply thereto, whether you informed him, as he states a representative of the Reading Company did inform him, with respect to the proposed railroad.

"A. I frequently saw parties located on the line described for the railroad. I was, throughout it all, very emphatic in saying to them that on our part we were very anxious to have the road go on; that the receivers were in better shape to construct the road than perhaps the railroad company would be were it outside of the control of the courts, and that whenever the Pennsylvania Railroad Company or The River Front Railroad Company were ready to go on, we should be very anxious and glad to go on with the construction of the road."

＊        ＊        ＊        ＊        ＊        ＊        ＊

"Q. I suppose I may take it that you did not, nor to your knowledge did the receivers of the Reading Railroad Company during the year, or at any time for that matter, decline or refuse to consult with Butterworth & Sons and the Hero Fruit Jar Company or The River Front Railroad Company, for the purpose of carrying out the purposes of that ordinance?

"A. You may.

"Q. That was in February, 1885. What was the next thing that took place with reference to action which followed, resulting in the construction of the railroad by The River Front Railroad Company alone? What was the next thing you heard, and what did you do?

"A. My impression is that the first thing I heard was that there was material being distributed along the street, and I made inquiry to learn by whose authority and under what arrangement it was proposed to use the material that was being distributed. Then it was that I learned that it was The River Front Railroad Company."

There is a statement of a refusal to consult with the said petitioners, relative to the construction of the road, and to jointly supervise the same, contained in the letter of J. N. Du Barry, the president of The River Front Railroad Company, dated March 10, 1886, to William Henry Lex, attorney for the petitioners for the ordinance, other than Butterworth & Son and the Hero Fruit Jar Company, in reply to his letter to Mr. George B. Roberts, president of the Pennsylvania Railroad Company, of May 27, 1884, in which Mr. Lex requests that his clients be given an opportunity to effect an arrangement with the plaintiff and defendant for a joint construction and use of the tracks upon the proposed road.

In this letter, which was signed by Mr. Du Barry as president of the River Front Railroad Company, the following language is used: "In answer I beg to advise you that this company has by virtue of its branching power, and the ordinance of the city of Philadelphia approved the twenty-third day of June, 1884, entered upon the construction of the road referred to. This company, being organized under the general railroad act, its branching power is of course undoubted, subject to the approval of the councils. The ordinance referred to gives that approval fully, when, within the year mentioned in the sixth section of the ordinance, the two companies, this and the Reading, refused to join with the individuals named therein, so to proceed, because the latter company declared its inability to do so." In the testimony of Mr. Lex, set out on pages 20 and 25, he says (page 20): "I cannot say in what way I received notice, but I did get notice, that the Pennsylvania Railroad people were going to lay the track there, and then there was some correspondence between my client and the two railroad companies and myself. The Reading Railroad Company answered that they would be glad to consult with all manufacturers up there in relation to the proposed railroad under the provisions of the ordinance of June 23, 1884. I tried to get the Pennsylvania

Railroad Company to do the same thing. I called at their office constantly during the year 1885 and also in 1886. I waited on Mr. Roberts I do not know how often. He used to keep me waiting there, and once or twice I went in and talked with him generally about the subject but could not get any satisfaction out of him. Finally he wrote me a letter, dated March 9, 1886, in these words:

"'Pennsylvania Railroad, President's Office,

"'PHILA., March 9th, 1886.

"'MR. WM. HENRY LEX, 51 N. 6th Street, Phila.

"'My Dear Sir:—In reference to the matter of the construction of the road on Commerce Street and other streets about which you called to see me on yesterday, I find it is a branch of The River Front Railroad Company, of which company Mr. J. N. Du Barry is president, to whom I beg leave to refer you.

"'Very truly yours,

"'GEO. B. ROBERTS.'"

And on page 25 " the Pennsylvania Railroad Company, however, gave the excuse for its refusal to meet in this consultation, that the Reading Railroad was unable, which fact the Reading people denied to me. Then, when the time expired, under that clause of the ordinance which you have read, in consequence of what I saw was to come, the River Front people having obtained a permit, I went to the Reading people to have them agree with the manufacturers that I represented that the road should be built. I never had any trouble, nor had my clients, in consulting with the Philadelphia & Reading Railroad people."

The only authority for the statement contained in Mr. Du Barry's letter, to be found in the evidence, is the application to the board of highway commissioners of October 1, 1885, for a permit, signed by the Hero Fruit Jar Company per F. W. Perry (see plaintiff's bill, page 11, and examiner's report, page 46), and the testimony of F. W. Perry on page 59, where he testifies that the alleged refusal of the Reading Company was made to him by its general traffic manager, J. Lowrie Bell.

There is no evidence corroborating Mr. Perry, who is positively and explicitly contradicted by both Mr. Bell and Mr. William Henry Lex in their testimony referred to, and I find as a fact that there was no such refusal by the Reading Company.

Since the commencement of these proceedings the road has been completed and is now in the possession and operation of The River Front Company. In its answer and cross bill the Reading Company offers to settle and adjust with The River Front Company an account covering the entire cost of construction of the road by the respective companies, so as to divide the cost equally between them.

Accounts showing the disbursements for construction, etc., were proved before the examiner and are attached to his report. At the argument both parties requested that at the present time report of such account be omitted, and I simply therefore . have considered the single question of the right to maintain, operate, and control the railroad constructed. No account is now stated.

In conclusion, I report that the right to use, maintain, and operate said railroad is not vested in The River Front Railroad Company, defendant, alone, but in said defendant and the Philadelphia & Reading Railroad Company, defendant, jointly.

Exceptions to the master's report were overruled and the following decree entered.

And now, January 19, 1895, it is ordered and decreed that the Philadelphia & Reading Railroad Company, defendant, pay to the River Front Railroad Company, defendant, the sum of $27,488.05, the balance payable by it of the cost of the construction of the railroad constructed by the defendants, or either of them, from Lehigh avenue and Cedar street along Commerce, York, Gaul, Almond, and Aramingo streets, in the city of Philadelphia, and of the real estate acquired in connection therewith, and that thereupon the said Philadelphia & Reading Railroad Company shall own and be permitted thereafter to use, maintain, and operate said railroad, together with the real estate and other property connected therewith mentioned in the foregoing report of the master in this suit, jointly with the River Front Railroad Company, defendant, in accordance with the provisions of an ordinance of the city of Philadelphia, approved June 23, 1884, entitled "An ordinance to authorize the construction and joint occupation of the railroad beginning at the intersection of Cedar street and Lehigh avenue, across Lehigh avenue and along Commerce, York, Gaul, Almond and Aramingo streets, and connecting the tracks of the River Front Railroad and the Philadelphia & Reading Railroad Companies."

*Error assigned* was decree as above.

*David W. Sellers*, for appellant.—The master should have reported that, as the city of Philadelphia, after the refusal of the injunction on the original bill, on April 13, 1886, did not further proceed thereon, no equity could be availed of by either of the railroad corporations which is inherent in it as a municipal corporation: Com. v. R. R., 27 Pa. 339; Barker v. Steel Co., 129 Pa. 551.

The master has erred in not holding on his own finding of facts that this appellant at the time it established the branch line in August, 1885, was vested with full authority to build and operate said branch line singly: Act of April 4, 1868, P. L. 64.

It is now established that priority of location confers priority of right: New Brighton etc. R. R. Co.'s App., 105 Pa. 13; Davis v. Titusville Ry. Co., 114 Pa. 308; Williamsport R. R. v. R. R., 141 Pa. 408.

The master has erred in holding that this appellant was under obligation to unite with a corporation insolvent during the year succeeding the ordinance of June 23, 1884: Barker v. Steel Co., 129 Pa. 551; Cochran v. Perry, 8 W. & S. 262; Horton's App., 13 Pa. 66.

*Thomas Hart, Jr.*, for appellee.—The ordinance could confer no railroad privileges on Butterworth & Sons or the Hero Fruit Jar Company. It is a very usual thing to draft ordinances for the construction of railroads in this city in the form of that in question, but the councils of the city have no power to originally confer the right to build railroads in the streets of the city upon any one, either railroad company or individual: Attorney General v. Lombard & South Sts. Pass. Ry., 10 Phila. 352; Barker v. Steel Co., 129 Pa. 551.

The charter of the Philadelphia & Reading Railroad Company is as ample to build such a railroad as the authority of The River Front Railroad Company to do so: Act of April 4, 1833, P. L. 144; Black v. R. R., 58 Pa. 249.

Councils having the right to give or withhold their consent to the building of a railroad may couple the consent with certain conditions, that is, conditions germane to the matter: Pass.

Ry. v. Phila., 17 W. N. C. 245; Mercer v. R. R., 36 Pa. 99; Dillon's Municipal Corporation, sec. 706; Musser v. Fairmount Pass. Ry. Co., 5 Clark, 470; R. R. v. Lavenworth, 1 Dillon 393; R. R. v. Richmond, 96 U. S. 521.

The ordinance of 1884 is to be looked upon as a consent to each road, upon condition that it shall allow the other to join in the construction and operation of the railroad to be built. Such a condition would be within the power of councils and entirely reasonable.

The cases cited, of Cochran v. Perry, 8 W. & S. 262, and Horton's App., 13 Pa. 66, have no application. This is not the case of the introduction of a new partner. The Reading Company was in the hands of receivers when the ordinance of 1884 was passed, the receivers having been appointed June 2, 1884, and all the action which The River Front Company took was during the receivership. The River Front Company cannot be heard now to complain thereof.

PER CURIAM, January 27, 1896:

There was no error in making the decrees referred to in the first specification, nor in dismissing the exceptions to the master's report recited in the third specification. The questions involved in the assignments of error, so far as they are material, have been so fully considered by the learned master that we deem it unnecessary to add anything to what he has said.

The decree is affirmed on his report, and the appeal is dismissed with costs to be paid by the defendant.